1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA, et al.,

Plaintiffs,

v.

NORTH AMERICAN HEALTH CARE, INC., et al.,

Defendants.

Case No. 14-cv-02401-WHO

**ORDER ON MOTION TO DISMISS**

Re: Dkt. No. 84

Currently before me is defendant John Sorensen's second motion to dismiss claims asserted by plaintiff relator John Orten under the federal False Claims Act (FCA). Pursuant to Civil Local Rule 7-1(b), this matter is appropriate for resolution without oral argument, and I hereby VACATE the March 30, 2016 hearing. Among several issues asserted in the motion, the public disclosure bar precludes Orten's claim regarding "upcoding" and Orten's failure to identify a Medicare statute or regulation that Sorensen violated that is a condition of payment makes meritless the "Star Ratings" claim. I grant in part and deny in part the motion to dismiss.

**BACKGROUND**

In my November 2015 Order, I dismissed Orten's FCA cause of action based on "Star Rating" allegations with leave to amend because Orten failed to allege sufficient facts and to identify particular statutory or regulatory requirements that are conditions of payment. Dkt. No. 74 at 8.[1] I also dismissed his FCA cause of action based on "upcoding" with leave to amend, because Orten failed to make "explicit his NAHC upcoding allegations and to plead facts showing that Sorensen may be liable for that conduct and that the public disclosure bar does not apply." *Id.*

---

[1] My November 9, 2015 Order contains a detailed description of the facts as alleged by Orten. That background section is hereby incorporated into this Order.

at 11.[2]  Finally, I dismissed with leave to amend Orten's conspiracy and state law FCA claims for failure to plead adequate facts.  *Id*. at 11-12.

Orten filed his Third Amended Complaint on December 9, 2015.  Sorensen again moves to dismiss the FCA claims based on Star Ratings and upcoding allegations, as well as the conspiracy and state law claims.  Dkt. No. 84.  The United States (the real party in interest) has filed a second "Statement of Interest," explaining its view that Orten's upcoding allegations cannot form the basis of an FCA claim under the public disclosure bar.  Dkt. No. 87.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555, 570.

"Because they involve allegations of fraud, qui tam actions under the FCA must meet not only the requirement of Rule 8, but also the particularity requirements of Rule 9."  *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011).  Under Federal Rule of Civil Procedure 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted).  However, "Rule 9(b) requires only that the circumstances of fraud be stated with particularity; other facts may be pleaded generally, or in accordance with Rule 8."  *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d at 992.

---

[2] I denied the motion to dismiss the FCA claim based on Orten's allegations that Sorensen promoted a referral and regeneration scheme.  *Id*. at 8-11.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## DISCUSSION

## I.   FCA CAUSE OF ACTION

### A.   Upcoding

#### 1.   Orten's Allegations Regarding Upcoding and Sorensen's Role

In the TAC, Orten makes explicit that his FCA claim is based in part on allegations that Sorensen engaged in "upcoding" to defraud the Medicare program.  Specifically he adds new allegations that NAHC pushed employees to increase "Resource Utilization Group" (RUG) rates to maximize the reimbursements NAHC received from the government. TAC ¶ 28.  A NAHC VP informed Orten (and other administrators) that NAHC had a company policy of "pushing the limit of maximizing Medicare reimbursement" by upcoding and using questionable and unnecessary therapies.  *Id.*  As part of that effort, NAHC pushed the use of "Accelerated Care Plus" (ACP) equipment, where there was no benefit to patients but a "windfall" in therapy minutes that NAHC could charge the government.  *Id.* ¶ 29.  These unnecessary and inappropriate therapies also included use of the "ACP bike."  *Id.* ¶ 30.  Orten alleges that he was also aware of the pervasive practice of RUG upcoding for "Activities of Daily Living" (ADLs), because the same NAHC VP taught "Minimum Data Set" (MDS) coding during administrator and MDS nurse meetings where Orten was present.  *Id.* ¶ 31.  The NAHC VP taught staff to always code a two-person assist for various activities regardless of whether it was necessary for the ADL, a practice which resulted in inflated rates and was inconsistent with the NAHC Residential Assessment Instrument (RAI) manual.  *Id.*

Orten alleges that NAHC continued to perform unnecessary therapy on residents, and thereby engaged in RUG upcoding, after the March 10, 2010 *Washington Post* article that

3

identified NAHC as a target of a government investigation into upcoding.  *Id*.  He asserts that Sorensen was personally involved in the upcoding both before and after the *Washington Post* article, and actively encouraged the fraud by instructing staff to perform unnecessary treatments that would allow maximum billing with minimal cost to NAHC.  *Id*. ¶ 32.  He states that Sorensen worked with unnamed individuals outside of NAHC, including unnamed doctors and administrators, to accomplish his goals.  *Id*.

### 2.  Public Disclosure Bar

Under the current version of the FCA, the public disclosure bar precludes a claim:

> if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed
>
> (i)  in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
>
> (ii)  in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
>
> (iii)  from the news media,
>
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
>
> (B)  For purposes of this paragraph, "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government *before filing an action* under this section.

31 U.S.C. § 3730(e)(4) (emphasis added).  The FCA was amended by the Patient Protection and Affordable Care Act in March 2010.  Conduct occurring before March 2010 is governed by the 1986 version of the FCA public disclosure bar which provided that:

> (A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, . . . or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
>
> (B) For purposes of this paragraph, 'original source' means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily

United States District Court
Northern District of California

4

United States District Court
Northern District of California

provided the information to the Government *before filing an action* under this section which is based on the information.

31 U.S.C. § 3730(e)(4) (1986) (emphasis added); *see also U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, No. 10-CV-1401 JLS WVG, 2015 WL 4892259, at *2 (S.D. Cal. Aug. 17, 2015) ("When the conduct at issue spans both pre and post-amendment, courts have held that conduct which occurred pre-amendment is subject to the prior version of the statute.").

Sorensen and the government contend that Orten's upcoding allegations are barred by the public disclosure for multiple reasons: (i) the substance of the RUG upcoding allegations were disclosed in the March 29, 2010 *Washington Post* article; (ii) the upcoding fraud was disclosed *to Orten* by the government in their April 5, 2013 interview with Orten, where Orten disclaimed any knowledge of the RUG upcoding fraud he now asserts; (iii) Orten did not disclose his knowledge of "upcoding" to the government before filing this action (or before he filed his First Amended Complaint); and (iv) nothing Orten disclosed to the government in April 2014 (prior to filing his SAC and TAC) materially adds to the publicly disclosed allegations.

###### a.      Public Disclosure

In the March 29, 2010 *Washington Post* article, it was disclosed that a division of the Health & Human Services Department (HHS) was specifically investigating NAHC for upcoding:

- that at the NAHC chain, 64% of patients were billed in the highest categories covering the most intensive rehabilitation (when the national average was 9%);
- that NAHC operated 21 of the top 30 facilities nationally with the highest percentage of residents billed in the most expensive reimbursement category;
- a congressman called for an investigation of NAHC alleging that NAHC "may have overbilled Medicare more than $180 million through a system-wide pattern of 'upcoding'"; and
- Sorensen's explanation that residents in the highest category at NAHC facilities are "recovering from major surgeries and need specialized care," but NAHC residents were no sicker or in greater need of therapy than residents at other facilities.

*See* Declaration of Jonathan Madore (Dkt. No. 70-1), Ex. 1; *see also id.*, Ex. 2 (SEIU April 6,

5

United States District Court
Northern District of California

1  2010 press release alleging excessive physical and occupational therapy services at NAHC based

2  on data analyses).

3  The Supreme Court has repeatedly observed that the text of the public disclosure bar

4  applies with a "broad sweep" to the forum in which the disclosure occurs, and that the phrase

5  "allegations or transactions" is "wide-reaching." *Schindler Elevator Corp. v. U.S. ex rel. Kirk*,

6  563 U.S. 401, 408 (2011).  Importantly, the public disclosure "need not contain an explicit

7  'allegation' of fraud, so long as the material elements of the allegedly fraudulent 'transaction' are

8  disclosed in the public domain." *U.S. ex rel. Found. Aiding The Elderly v. Horizon W.*, 265 F.3d

9  1011, 1014 (9th Cir.) *opinion amended on denial of reh'g sub nom. U.S. ex rel. Found. Aiding

10  Elderly v. Horizon W., Inc.*, 275 F.3d 1189 (9th Cir. 2001).  Put another way, if the public

11  disclosure "was sufficient to enable [the government] adequately to investigate the case and to

12  make a decision whether to prosecute," the bar will apply to subsequent FCA suits based on

13  similar allegations.  *Id.* at 1016 (internal quotations omitted); *see also United States v. Kiewit Pac.

14  Co.*, 41 F. Supp. 3d 796, 803 (N.D. Cal. 2014) (bar applies when prior disclosure sufficient to

15  place government "on notice" of alleged fraud).

16  I conclude that the *Washington Post* article and the SEIU press release publicly disclosed

17  the exact type of fraudulent conduct, upcoding by providing unneeded therapy services, on which

18  Orten rests his current upcoding FCA allegations.  In these circumstances, the government did not

19  need the "details" Orten allegedly provided – specific identification of a few types of unnecessary

20  therapy and services being provided to NAHC clients – in order to recognize or investigate fraud

21  by NAHC.

22  The two cases Orten relies on to argue that the *Washington Post* article does not disclose

23  the basis for his claims because that article did not disclose *actual* instances of fraud but only

24  suspicion of fraud based on data analyses, which could have been the result of mistakes and

25  miscoding by NAHC, are distinguishable.  Oppo. at 8-9.  In *U.S. ex rel. Goldberg v. Rush Univ.

26  Med. Ctr.*, 680 F.3d 933 (7th Cir. 2012), the GAO issued a report concluding that "many if not all

27  of the 125 teaching hospitals affiliated with medical schools were billing for unsupervised services

28  that residents performed" in violation of Medicare rules.  *Id.* at 935.  The relators in *Goldberg*,

6

however, were not barred by that public disclosure because they alleged that a particular hospital ran afoul of Medicare requirements by certifying that its attending physicians supervised resident services but did so "inadequately."  In doing so, the relators disclosed a "kind of deceit that the GAO report does not attribute to *any* teaching hospital." *Id*. at 936.  Therefore, the GAO report, which was at the "highest level of generality," did not bar the relators' specific identification of a type of fraud at a particular hospital.  *Id*.  Similarly, in *U.S. ex rel. Baltazar v. Warden*, 635 F.3d 866, 867 (7th Cir. 2011), the court concluded that a GAO report finding that "57% of chiropractors' claims (in a sample of 400) were for services not covered by the Medicare program, and another 16% were for covered services that had been miscoded" did not bar a relator's claim where the statistics at issue could have been the result of mistake (not fraud) and – expressly more important to the court's conclusion – the report never mentioned any particular provider by name. *Id*.  Because the relator's suit was based on "defendant-specific facts, not on the public information that false or mistaken claims are common," it was not barred.  *Id*. at 869.  Neither disclosure involved public identification of the exact type of fraud at a specific location that underlay the FCA claim, as the article and press release did here.

### b.    Original Source

Orten contends he was the original source of the upcoding allegations at issue because he voluntarily disclosed them to the government in his July 2014 interview prior to filing his SAC in April 2015.  *See, e.g.,* Dkt. No. 71 (Relator's Response to Government's Statement of Interest) at 6.  In his TAC, he does not specifically identify when he disclosed the "upcoding for unnecessary therapy" allegations to the government, but asserts that he submitted a report regarding "fraud" occurring at the NAHC Ramona facility to the Office of Inspector General on November 23, 2012. TAC ¶ 66.  He also discussed his allegations of "fraud" during an April 2013 meeting with representatives of the OIG.  *Id*. ¶ 72.  In his Opposition to this motion, Orten again argues that he disclosed his upcoding allegations in his second meeting with government investigators in July 2014.  Oppo. at 11.

With respect to conduct occurring before the March 2010 FCA amendments, Orten's claims are barred because there is no evidence Orten disclosed material information to the

1    government before he filed his FCA suit.  As explained in the initial and second declarations of

2    Jonathan Madore, there was nothing in Orten's November 2012 report to the OIG (or in any

3    follow up emails) which disclosed that Orten had any personal knowledge about upcoding at

4    NAHC.  Declaration of Jonathan Madore (Dkt. No. 70) ¶ 4; Second Declaration of Jonathan

5    Madore (Dkt. No. 87-1) ¶¶ 4-9.  Nor was there any material information provided by Orten in the

6    subsequent government interview in July 2014, that "added" to the government's longstanding

7    investigation of NAHC's upcoding practices for unnecessary therapy.  Madore Decl. ¶ 5.[3]

8         For these reasons as well, Orten cannot be considered an original source for conduct

9    occurring after the March 2010 FCA amendments, which allow a relator to show that he

10   voluntarily disclosed facts that "materially added" to already publicly disclosed allegations prior to

11   filing suit "based on this information."  Orten has failed to show that he voluntarily provided any

12   "material" information regarding upcoding by providing unnecessary therapy at NAHC prior to

13   filing his original and First Amended Complaints (in January and March 2014) *or* the Second

14   Amended Complaint (April 2015).[4]  Madore Decl. ¶ 5.

15        Orten responds that he has met the materiality requirement – despite the testimony of

16   Madore – by showing the government that fraud that was previously disclosed continued after the

17   disclosure (here, that the fraud continued after the March 29, 2010 *Washington Post* article).

18   Oppo. at 10-11.  Orten misstates the law.  Where the allegations are simply that the same fraud

19   previously disclosed is ongoing, those allegations will be barred.  The cases Orten relies on are not

20   to the contrary and deal with situations where *changed* circumstances make the relator's new

21   disclosures of ongoing fraud material to the government.  *See, e.g.*, *U.S. ex rel. Booker v. Pfizer*,

22   *Inc.*, 9 F. Supp. 3d 34, 46 (D. Mass. 2014) (allegations that a qui tam defendant in a prior suit, who

23   agreed in its settlement with the government not repeat its fraud, repeated its prior fraud were not

24   

United States District Court
Northern District of California

---

[3] The parties dispute whether under the prior version of the public disclosure bar, Orten's claim is barred because there is no dispute that he failed to voluntarily provide any information regarding upcoding prior to filing this action in January 2014.  However, because I find that the information disclosed by Orten in July 2014 did not materially add to the government's investigation, I need not determine that issue.

[4] The upcoding allegations were included in cursory form in the SAC.  My November 2015 Order required Orten to amend to explicitly allege the bases for his upcoding allegations and assert facts tying Sorensen to those claims. November 2015 Order at 11.

barred); *U.S. ex rel. Hoggett v. Univ. of Phoenix*, No. 2:10-CV-02478-MCE, 2012 WL 2681817, at *4 (E.D. Cal. July 6, 2012) ("If, as Relators allege, the new procedures cover up a continuation of the previous fraud, then Relators have provided information that is independent of and materially adds to the information publicly disclosed" during a prior FCA case); *but see U.S. ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016) (allegations "on information and belief" that after settling with the government, a defendant was still conducting the same fraud are insufficient to state a claim under Rule 9(b)).  There are no similar changed circumstances identified here.

        Orten's FCA allegations based on alleged upcoding for unnecessary therapy by NAHC fall under the public disclosure bar and are DISMISSED with prejudice as to Orten.[5]

### B.  Star Ratings

        In my prior Order, I dismissed Orten's FCA claims based on the Star Ratings allegations because Orten had failed to "identify particular statutory or regulatory requirements that are true conditions of payment and not simply conditions of participation," in the Medicare program.  Dkt. No. 74 at 8.  I explained that in the Ninth Circuit, allegations of fraud based on failure to comply with regulations could constitute an actionable FCA claim in the Medicare context only where "compliance with a regulation is a condition of payment as opposed to a condition of program participation."  *Id.* at 7.  In his TAC, Orten does not cite to any Medicare statute or regulation that he claims Sorensen violated which is a condition to a specific payment, but only regulations which are conditions of participation in the Medicare program.  *See* TAC ¶¶ 6, 42; *see also* Oppo. at 17 (citing 42 C.F.R. § 488.300, 42 C.F.R. § 488.330, 42 C.F.R. § 488.406; 42 U.S.C. § 1396r(g); 42 U.S.C. § 1395i-3(g)).  As I found in the prior Order, allegations that Sorensen and NAHC took steps to inflate their Star Ratings by manipulating "surveys" required under the Medicare program are insufficient to state an FCA claim.  Dkt. No. 8.

        In his TAC and Opposition to Sorensen's current motion to dismiss, Orten relies heavily on the fact that the "surveys" (which are the basis for the Star Ratings allegedly inflated by the

_____

[5]   As the government points out, the dismissal is without prejudice as to the government because government FCA claims are not subject to the public disclosure bar.  Dkt. No. 87 at 2 n.2.

United States District Court
Northern District of California

1  fraudulent conduct of Sorensen and NAHC) form the basis of the ratings assigned to healthcare

2  entities on the Medicare program's "Nursing Home Compare" website.  Oppo. at 17.  However,

3  that arguable fraud on the Medicare program and the public (who might rely on those ratings in

4  selecting care facilities) is not cognizable under the FCA absent the identification of a regulation

5  where compliance is a condition to payment under that program.   The fact that regulations require

6  health care entities to participate in the surveys, and that the results of those surveys are published

7  to the public, does not make fraud related to those surveys actionable under the FCA.

8       Orten's FCA claim related to Star Ratings (and the Nursing Home Compare website) is

9  DISMISSED with prejudice.[6]

10 **II.  STATE LAW CLAIMS**

11      **A.  California**

12      In my prior Order, I dismissed Orten's FCA claims asserted under California law "so that

13 Orten can plead facts showing how false claims were submitted to the states in violation of the

14 California" statute.  November 2015 Order at 12.  In the TAC, Orten adds the following:

> Because state Medicaid programs operate in conjunction with
> Medicare, Defendants defrauded California when they defrauded the
> United States. For example, after the twentieth day of a stay at a
> skilled nursing facility covered by Medicare, a patient's co-
> insurance becomes partially responsible for paying the bill. For
> Medi-Cal-qualifying patients, Medi-Cal acts as the co-insurance.
> Therefore, when Defendants conducted their fraudulent scheme to
> regenerate residents' Medicare reimbursement, they also defrauded
> the state Medi-Cal programs.

20 TAC ¶ 80.  In his Opposition, Orten asserts that as a NAHC administrator he had personal

21 knowledge that there were residents who qualified for both Medicare and Medicaid, and that some

22 residents would "under standard procedures, simultaneously have their coverage paid for by both

23 Medicare and Medicaid in the manner described in the TAC."  Oppo. at 18-19.

24      Sorensen argues that this addition is still insufficient because the "dual coverage"

25

26

[6] Sorensen also moves to dismiss Orten's FCA claim based on "regeneration" allegations as
27 implausible. Motion at 19-20; Reply at 12.  In the prior Order, I denied Sorensen's motion as to
Orten's FCA claim based on his "referral and regeneration" allegations.  November 2015 Order at
28 8-11.  Sorensen does not justify why I should reconsider that determination under Civil L.R. 7-9,
and I will not do so.

allegation is insufficient to show the submission of a false claim to California and Orten fails (as he failed with respect to the federal claims) to adequately plead facts showing that Sorensen had the requisite scienter to defraud California.[7]  However, as Orten's federal referral and regeneration claims survive, and as Orten has alleged how California's Medicaid program would be defrauded in the same way as the Medicare program is by the schemes that Orten witnessed occurring in California, Orten has adequately alleged his claims under California law at this juncture.

### B. Washington

Sorensen points out that there are no facts alleged in the TAC regarding fraud committed under the Washington State FCA, other than the broad allegations at paragraph 93 that "[u]pon information and belief, Defendants' actions described herein occurred in the State of Washington as well.  Because state Medicaid programs operate in conjunction with Medicare, Defendants defrauded California when they defrauded the United States."  TAC ¶ 93.[8]  Nor does Orten respond to Sorensen's argument that since the Washington FCA was not enacted until June 7, 2012 – seven months before Orten left NAHC – most of the conduct alleged could not be covered by the Washington Statute.

Given Orten's failure to allege *any* facts about any conduct occurring in Washington State – despite being given the opportunity to do so in my prior Order – this claim is DISMISSED with prejudice.

### III.  CONSPIRACY

In the prior Order, Orten's conspiracy claim was dismissed because Orten failed to "allege any facts expressly connecting Sorensen to non-NAHC employees as part of the alleged conspiracy to submit fraudulent Medicare claims."  November 2015 Order at 12.  In his TAC, the only new allegation regarding the conspiracy claim is that NAHC facilities:

> commit the same kind of regeneration fraud that Ashok committed

---

[7] Sorensen also argues that the California law claim is insufficient because RUG rates – related to the upcoding allegations – are not used in the Medicaid program.  Reply at 13 – 14.  However, as noted above, the upcoding allegations have been dismissed and there are no separate California-based upcoding allegations alleged.

[8] Presumably the reference to California in this paragraph is an error and Orten intended to reference Washington.

United States District Court
Northern District of California

> in which residents were admitted to hospitals to reset their Medicare
> counter. These facilities also worked in concert with people outside
> of NAHC including without limitation Janelli Savellano, who
> worked at local hospitals and were able to use their influence to
> direct patients to NAHC facilities, and including Dr. Nagasamudra
> Ashok and other physicians who directed patients to NAHC
> facilities as part of Defendants' ongoing fraudulent schemes.
> Sorensen personally recruited these NAHC outsiders to be
> participate [sic] in Defendants' ongoing fraudulent schemes.

TAC ¶ 60; Oppo. at 21. The remaining substantive federal and California FCA claims are those

based on the referral and regeneration scheme. As to that scheme, in his TAC Orten alleges that in

October 2011, Sorensen directed staff to focus on Medicare "Part B." TAC ¶ 43. The resulting

corporate push was by the NACH VP (who instructed staff to engage in the upcoding for ACP

therapy and ADL billing identified by Orten in his TAC), and led to patients being reclassified for

additional but unnecessary services covered by Medicare Part B. *Id*. In Opposition, Orten also

relies on Paragraph 60 of the TAC where he alleges that NAHC:

> facilities also worked in concert with people outside of NAHC
> including without limitation Janelli Savellano, who worked at local
> hospitals and were able to use their influence to direct patients to
> NAHC facilities, and including Dr. Nagasamudra Ashok and other
> physicians who directed patients to NAHC facilities as part of
> Defendants' ongoing fraudulent schemes. Sorensen personally
> recruited these NAHC outsiders.

At this stage, that allegation is sufficient for purposes of the FCA conspiracy claim based on the

alleged referral and regeneration scheme.

The motion to dismiss the conspiracy claim is DENIED.[9]

## CONCLUSION

Orten's FCA claims based on allegations regarding Star Ratings and upcoding are

DISMISSED with prejudice. Orten's claim under Washington State law is DISMISSED with

prejudice. The motion to dismiss is otherwise DENIED, and Orten may proceed with his federal

and California FCA and conspiracy claims based on the referral and regeneration allegations.

Sorensen shall file his answer within fourteen (14) days of the date of this Order. A Case

---

[9] Sorensen also complains that Orten has reasserted his now-dismissed Stark Law and employment claims in the TAC. Motion at 25. As Orten explains, the inclusion of those claims in the TAC is simply to preserve Orten's record for any potential appeal. Those claims are no longer active in this case, but they may remain in the TAC.

Management Conference will be held on **April 19, 2016 at 2:00 p.m.** in Courtroom 2. A Joint

Case Management Statement shall be filed on April 13, 2016.

   **IT IS SO ORDERED**.

Dated: March 28, 2016



WILLIAM H. ORRICK
United States District Judge